IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:18-cv-00367-TWT |
| EAST PERIMETER POINTE APARTMENTS LP; VENTRON MANAGEMENT, LLC; MIRANDA WILDER; CONSTANCE IRIONS; and ADRIAN JOHNSON; | |
| Defendants. | |
| VENTRON MANAGEMENT, LLC, and EAST PERIMETER POINTE APARTMENTS LP, | |
| Third-Party Plaintiffs, | |
| v. | |
| LEXINGTON INSURANCE COMPANY; | |
| Third-Party Defendant. | |

**PLAINTIFF MT. HAWLEY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Mt. Hawley Insurance Company seeks a declaration that its CGL Policy No. SLO0001470 ("Policy") does not cover two lawsuits arising out of an incident at East Perimeter Pointe Apartments. East Perimeter Pointe Apartments LP and Ventron Management, LLC (if they even qualify as insureds under the Policy) were required to report the incident to Mt. Hawley immediately. Although both East Perimeter and Ventron knew of the incident on December 26, 2015, no notice was provided to Mt. Hawley until November 13, 2017, after East Perimeter and Ventron were sued.

East Perimeter and Ventron's failure to comply with the policy's notice requirements precludes coverage of the December 26, 2015 incident, the underlying lawsuits, or any judgments in those lawsuits. There are no issues of material fact, and Mt. Hawley is entitled to judgment as a matter of law.

## Statement of Facts

***The underlying lawsuits.***

Miranda Wilder and Constance Irions filed a lawsuit against East Perimeter and Ventron in the State Court of DeKalb County (Civil Action No. 17A66597) on October 12, 2017, to recover damages tied to Marcus Wilder being shot and killed

on December 26, 2015.[1] In their complaint, Wilder and Irions alleged that East Perimeter and Ventron operated and managed the Decatur, Georgia apartment complex. Marcus Wilder, after entering his apartment with his mother Miranda on December 26, 2015, saw an unknown assailant come out of a closet who shot Marcus. Marcus ultimately died as a result of the gunshot wound.[2] They allege that East Perimeter and Ventron were negligent in providing security at the apartments and are liable for the Wilder's death.[3]

Adrian Johnson filed a lawsuit against East Perimeter and Ventron, in the State Court of DeKalb County (Civil Action No. 17A67222) on December 4, 2017.[4] Johnson alleged that he was at Wilder's apartment on December 26, 2015, when several assailants broke into the apartment unit and beat Johnson with a weapon.[5] Johnson also alleged that East Perimeter and Ventron were negligent in providing security at the apartments and, therefore, are liable for his damages.[6]

---

[1] *Petition for Declaratory Judgment* [Doc. 1], ¶¶ 42-43, Ex. A [Doc. 1-1], ¶ 1; *Answer of Miranda Wilder, Constance Irions and Adrian Johnson* [Doc. 10], ¶¶ 42-43; East Perimeter's *Amended Answer* [Doc. 28], ¶¶ 42-43; Ventron's *Amended Answer* [Doc. 29], ¶¶ 42-43.

[2] *Complaint* [Doc. 1-1], ¶¶ 4-6, 8-11.

[3] *Id.* at ¶¶ 23, 30

[4] *Petition for Declaratory Judgment* [Doc. 1], ¶ 48; *Answer of Miranda Wilder, Constance Irions and Adrian Johnson* [Doc. 10], ¶ 48; East Perimeter's *Amended Answer* [Doc. 28], ¶ 48; Ventron's *Amended Answer* [Doc. 29], ¶ 48.

[5] *Plaintiff's First Amended Complaint* [Doc. 1-2], ¶¶ 9-11; *Petition for Declaratory Judgment* [Doc. 1]/ *Answer of Miranda Wilder, Constance Irions and*

*East Perimeter and Ventron's relationship.*

East Perimeter was the owner of East Perimeter Pointe Apartments on December 26, 2015.[7] East Perimeter and Ventron had entered into a Property Management Agreement, in which Ventron agreed "to supervise and direct the leasing, management, and operation" of the apartments and to "comply with all reporting and cooperation provisions in all applicable [insurance] policies."[8]

*East Perimeter and Ventron's knowledge of the incidents.*

Both East Perimeter and Ventron had notice of the incident on December 26, 2015.[9] In a December 26, 2015 email to Stephen Greenberg (President of East Perimeter)[10] with the subject "SHOOTING AT EPP," Ventron's COO[11] wrote:

---

*Adrian Johnson* [Doc. 10]/East Perimeter's *Amended Answer* [Doc. 28]/ Ventron's *Amended Answer* [Doc. 29], ¶ 50.

[6] *Plaintiff's First Amended Complaint* [Doc. 1-2],¶¶ 12, 27, 43.

[7] East Perimeter's *Responses to Plaintiff Mt. Hawley's Second Set of Interrogatories* (excerpts attached as Exhibit A), p. 5, response to Interrogatory No. 1; Ventron's *Responses to Plaintiff Mt. Hawley's Second Set of Interrogatories* (excerpts attached as Exhibit B), p. 5, response to Interrogatory No. 1.

[8] Property Mgmt. Agrmt. (attached as Exhibit C-3), §§ 1.09, 2.01, 8.05.

[9] East Perimeter's *Amended Answer* [Doc. 28], ¶ 66 ("EPP states that on or about December 26, 2015, it had notice of the Wilder/Johnson incidents."); Ventron's *Amended Answer* [Doc. 29], ¶ 66 ("Ventron states that on or about December 26, 2015, it had notice of the Wilder/Johnson incidents.").

[10] *See* verifications to East Perimeter's interrogatory responses [Ex. A, pp. 6-7, and Ex. D, pp. 5-6 ](signed by Greenberg as president of East Perimeter); East Perimeter's *Initial Disclosures* [Doc. 32], p. 5.

[11] *See* Ventron's *Initial Disclosures* [Doc. 33], p. 6.

Police in DeKalb are investigating after a man was found shot dead outside of his apartment on Saturday. At this point, few details are available although one of our senior Team Members who spoke with detectives reported that police have alleged suspect(s) in custody. Lorena, who is out of town, ask [sic] me to pass on her report.

She reported that our Senior team has all been alerted and responded. She will have a team in place on the property all week to notify residents of the situation and provide them with assistance and reassurance. The Property Manager is also at the property and has four security officers on duty. The complex is currently calm and qui[et] and our Team is experienced in handling these types of unfortunate events.[12]

Tiffany Copeland (a manager at the apartments)[13] completed an Incident Report on December 25, 2015:[14]

> Type of Incident:  Murder and Burglary
> *Accident, Criminal, Fire, Ambulance, Vandalism, Mechanical, Theft, Loss, Chemical, ETC.*
>
> **What Happened:**
> The resident in apartment 4904 left a friend at home on December 25th to visit with parents while he was visiting with parents his friend heard a person hitting the door. He didn't answer the door. There were 3 guys that came in took his wallet and credit cards. They told the gentlemen that if he didn't give him the correct pin number that they would kill him. The subjects beat the friend up and the friend was rushed to the hospital. Once Marcus Wilder resident from 4904 returned home from confirming his friend was ok, he heard noise in his closet. Once he heard noise in his closet he opened the closet door and the man then was hiding shot him. The victim Marcus Wilder ran out his home fell face forward on the ground that is where he died.

The part of the report for the date of notice to insurers was left blank:[15]

---

[12] That email (EPP0002) is included in the attached Exhibit C-1.

[13] Ventron's *Responses and Objections to Plaintiff's Fourth Interrogatories* (attached as Exhibit F), response to Interrogatory No. 3.

[14] The Incident Report Form (EPP0115 and VENTRON0001) is included in Exhibits C-1 and C-2 (attached).

[15] *See* Ex. C-1 (EPP0115) and Ex. C-2 (VENTRON0001).

| This Section for Management Use |
|---|
| Insurance Notified (Date)_____ |
| By Phone: _____     By Mail: _____ |
| Name of Insurance Agent: |
| Owner Notified: YES_____     Name of Owner Contacted: Tiffany Copeland |
| Police Notified: YES_____     Police Report: _Will have one in 3 days_____ |

The manager of the apartments emailed the Incident Report to Michael Scaljon (General Counsel and Registered Agent for Ventron) on December 26, 2015,[16] who prepared the following security update to apartment residents on or about December 27, 2015:

### Security Update at East Perimeter Pointe Apartments

As some residents may already know, on Christmas Day, an unfortunate incident occurred at East Perimeter Pointe Apartments that resulted in the death of a resident.

We understand such news is troubling to residents that choose to live at East Perimeter Pointe because they want a safe environment for themselves and their family. But we also want to assure our residents that we believe this is an isolated incident and we are actively working with authorities to assist them in this matter.

As we make our best efforts to ensure a safe quality of life for our residents, we also want our residents to report any suspicious behavior or activity to our management, courtesy officers and the police department. We look forward to working with you in the coming weeks and days to make sure our community is as safe as it possibly can be.

Thank you for your understanding,

East Perimeter Pointe Apartments, LP[17]

---

[16] *See* Ex. J-2 and Ex. G (Ventron's 2015 and 2016 Annual Registrations with the Georgia Secretary of State, identifying Scaljon as its registered agent).

[17] *See* Ex. C-1 at EPP0116 (Security Update) and EPP0108 (showing electronic title of Security Update as "EPP Crime Letter 12.27.15.docx");

Ventron received a January 8, 2016 letter from attorney Evon D. Williams concerning claims related to the shooting of Marcus Wilder:

> Please allow this letter to inform you that our firm has been retained by Constance Irions on behalf of Marcus Wilder (deceased), Parent of London McKenzie Wilder, minor child of deceased, to investigate claims surrounding the shooting of Marcus Wilder at the East Perimeter Pointe Apartments located at 4946 Snapfinger Road, Decatur, Georgia 30035 on or about December 26, 2015.[18]

In the letter, attorney Williams asked Ventron for insurance information, "a copy of all applicable insurance policies with declaration pages," that Ventron "forward our request for information to all affected insurers," and that all affected insurers "respond to this request promptly to avoid filing of a lawsuit at this time."[19] The letter was sent via certified mail to Ventron's registered office and was received and signed for by Deidra Baitey (a leasing agent employed by Ventron) on January 11, 2016.[20]

On October 19, 2016, Tuan Vo (Assistant Controller of Ventron) sent the Security Update and a copy of the Incident Report to Ryan Cockman of Florida

---

Ventron's *Responses and Objections to Plaintiff's Fourth Interrogatories* [Ex. F], response to Interrogatory No. 4.

[18] Ex. C-5 at INDIVIDUAL DEFS 00143.

[19] *Id.*

[20] Ventron's 2015-2016 Annual Registrations [Ex. G]; Ex. C-5 at INDIVIDUAL DEFS 00144; Ventron's *Answers to Plaintiff Mt. Hawley's Third Set of Interrogatories* (attached as Exhibit H), answer to Interrogatory No. 1.

Bond & Mortgage Inc. and Lou Litvin of Ventron.[21] Cockman forwarded the

documents to Lee Greenberg of Osgoode Properties on October 21, 2016,[22] who

forwarded them to Stephen Greenberg and Jessica Greenberg the next day, stating:

> Did you guys ever read the incident report from the murder at EPP in
> 2015? A really strange and sad event.
>
> What Happened:
>
> The resident in apartment 4904 left a friend at home on December 25th
> to visit with parents[. W]hile he was visiting with parents his friend
> heard a person hitting the door. He didn't answer the door. There were
> 3 guys that come in took his wallet and credit cards. They told the
> gentlemen that if he didn't give him the correct pin number that they
> would kill him. The subjects beat the friend up and the friend was
> rushed to the hospital. Once Marcus Wilder resident from 4904
> returned home from confirming his friend was ok, he heard noise in
> his closet. Once he heard noise in his closet he opened the closet door
> and the man that was hiding shot him. The victim Marcus Wilder ran
> out his home fell face forward on the ground that is where he died.[23]

Stephen Greenberg, in addition to being East Perimeter's President,  is also the

President of Osgoode Properties Ltd. and East Perimeter Pointe GP Inc. (the

General Partner of East Perimeter).[24]

---

[21] Ex. C-1 at EPP0109-EPP0110, EPP0115.

[22] *Id.* at EPP0108. *See also* Ex. C-1 at EPP0114 (Lee Greenberg's electronic signature with Osgoode Properties).

[23] Ex. C-1 at EPP0108.

[24] *See* East Perimeter's *Responses to Plaintiff Mt. Hawley's Fourth Set of Interrogatories* (attached as Exhibit I), p. 2, response to Interrogatory No. 3 (identifying East Perimeter Pointe GP Inc. as East Perimeter's general partner and Stephen Greenberg as the director, president, and secretary of East Perimeter Pointe GP Inc.); Ex. C-4, p. 4 (Asset Mgmt. Agrmt., signed by Stephen Greenberg

***The Mt. Hawley policy.***

Mt. Hawley issued a commercial general liability insurance policy (Policy No. SLO0001470), with a policy period of December 15, 2015, through December 15, 2016 ("Policy").[25] The declarations (as amended by a change endorsement) identify the named insured as "Skinner Select, WCPP Risk Purchasing Group Inc. (See Schedule of Named Insureds),"[26] which included various property owners throughout the country as members.[27] The Policy does not include either East Perimeter or Ventron as named insureds, but includes "Osgoode Properties" and "Crestview Apartments, 4946 Snapfinger Woods Drive, Decatur GA" in its "Named Insured and Location Supplementary Schedule."[28]

The Policy includes the following notice conditions:

---

as the President of Osgoode Properties Ltd. and as the President of East Perimeter Pointe GP Inc.).

[25] *Declaration of Teresa McNail* (attached as Exhibit J), ¶ 3, Ex. J-1, p. 2. Throughout this brief, "Mt. Hawley" refers collectively to Mt. Hawley Insurance Company and related companies RLI Insurance Company and RLI Adjusting Company.

[26] Policy [Ex. J-1], pp. 84-85 (change endorsement effective December 15, 2015). That named insured is hereinafter referred to as "Skinner Select."

[27] *Dep. of Sue Williams* [Doc. 90], p. 35 (cited excerpts and exhibits from this deposition are attached as Exhibit L); Policy [Ex. J-1], pp. 87-124 (listing property owners and properties).

[28] Policy [Ex. J-1], pp. 114-115.

**2. Duties In The Event Of Occurrence, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or suit as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit".

.  .  .

**CLAIM HANDLING**

**In the event of any occurrence that may result in a claim against this policy, the insured will immediately report such occurrence and cooperate fully with the following claim adjusting company:**

**RLI ADJUSTING COMPANY.**[29]

The Policy also provides, "No person or organization has a right . . . [t]o sue us on this Coverage Part unless all of its terms have been fully complied with."[30]

---

[29] Policy [Ex. J-1], pp. 17-18, 26 (emphasis added).
[30] Policy [Ex. J-1], p. 18.

- 9 -

***The late notice to Mt. Hawley.***

Mt. Hawley first received notice of any claim arising out of the December 26, 2015 incident on November 13, 2017, when it received a copy of the complaint in the Wilder Lawsuit.[31] Mt. Hawley first received notice of the Johnson's claim (although Johnson was not identified by name) on December 6, 2017, when Ventron sent Mt. Hawley a copy of the Incident Report.[32] Mt. Hawley was not given any notice of the incident or the death of Wilder prior to November 13, 2017, or the Johnson claim prior to December 6, 2017.[33]

Neither Ventron nor East Perimeter ever provided Mt. Hawley with a copy of the January 8, 2016 letter to Ventron from Wilder's attorney concerning Wilder's claims or any notice of that letter, despite the attorney's request that his letter be forwarded to all affected insurers.[34] Mt. Hawley did not receive notice or a copy of that letter until the letter was served on Mt. Hawley's counsel by Miranda Wilder's attorney during discovery in this case on May 21, 2018.[35]

---

[31] *Declaration of Teresa McNail* [Ex. J], ¶ 4.

[32] *Id.*, ¶ 5, Ex. J-2.

[33] *Id.* at ¶ 6.

[34] *Id.* at ¶ 7; Ex. C-5 at INDIVIDUAL DEFS 00143.

[35] *Declaration of Teresa McNail* [Ex. J], ¶ 7; *Declaration of W. Randal Bryant*, ¶ 6;  Ex. C-5 at p. 1 and INDIVIDUAL DEFS 00143.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

East Perimeter and Ventron breached the Policy's notice conditions, waiting almost two years before providing any notice to Mt. Hawley of the incident and never providing Mt. Hawley with a copy of the January 8, 2016 insurance demand letter from the underlying plaintiffs' attorney. The Court should grant Mt. Hawley's motion for summary judgment because there are no genuine issues of material fact, and Mt. Hawley is entitled to a judgment as a matter of law. [36]

## I.    <u>Georgia common law applies to this case.</u>

Because this diversity case is pending in Georgia, Georgia's choice of law rules apply.[37] East Perimeter and Ventron allege that Mt. Hawley delivered the Policy in California and may contend that California law governs the interpretation of the Policy.[38] But Georgia's common law applies because (1) the policy was delivered to named insured Skinner Select's insurance broker in Georgia, and, (2) even if the Policy had not been delivered here, Georgia law would still apply under the presumption of identity rule.

---

[36] *See* FED. R. CIV. PROC. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.").

[37] *See Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014) ("A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state, in this case Georgia.").

[38] East Perimeter's *Amended Answer* [Doc. 28], p. 15, ¶ 7; Ventron's *Amended Answer* [Doc. 29], p. 16, ¶ 7.

## A.   Delivery of the policy determines choice of law.

Under Georgia law, "contracts are to be governed by their nature, validity and interpretation by the law of the place where they are made," and "an insurance contract is made where it is delivered."[39] The Policy was delivered in Georgia to R-T Specialty, an independent insurance broker, in Georgia.[40] Because independent brokers like R-T Specialty are agents of the insured,[41] delivery to R-T

---

[39] *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014) (internal quotation marks and citations omitted).

[40] *See Williams Dep.* [Doc. 90/Ex. L], pp. 10-14, 16-17, 53-54, Ex. 5 [Doc. 90-15] (explaining that R-T, an independent wholesale broker, obtained the Policy for M.G. Skinner, Skinner Select's retail broker); *Declaration of Teresa McNail* [Ex. J], ¶ 10. Although the Policy was delivered simultaneously to employees of R-T Specialty in Georgia and Florida, Georgia law applies rather than Florida law, due to the presumption of identity rule discussed below. Also, the apartments at issue were located in Georgia and more of the covered locations listed in the Policy were in Georgia (23 properties and 3059 units) than Florida (19 properties and 2158 units). *See* Policy [Ex. J-1], pp. 87-95, 102, 113-118, 204-205, 207, 209, 215, 225, 232 (including Georgia properties as Covered Location Nos. 598, 623-625, 636, 665-671, 673-678, and 680 and at Change Endorsements 77-78, 82, and 105 and Florida properties as Covered Location Nos. 3, 202-208, 352, 602, 618-621, 637, and 695 and at Change Endorsements 80, 88, and 98); *Williams Dep.* [Doc. 90/Ex. L], pp. 50-51, Ex. 15 [Doc. 90-15] (showing 3059 Georgia units and 2159 Florida units).

[41] *Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76, 81, 752 S.E.2d 135 (2013) ("independent agents or brokers are generally considered the agent of the insured, not the insurer.") (citation omitted); *AmTrust North America v. Smith*, 315 Ga. App. 133, 134-135, 726 S.E.2d 628 (2012) (where an insurance agent assists the insured in obtaining insurance, he is the agent of the insured).

Specialty in Georgia constituted delivery to the insured.[42]

**B.      Presumption of identity requires using Georgia common law.**

Even if the Policy is considered to have been delivered to the insured in California or Florida first, Georgia common law still applies under Georgia's presumption of identity doctrine, which provides "that in the absence of a foreign statute on point, 'at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia.'"[43] This Court previously applied this rule, holding that "the application

---

[42] *See, e.g., Coffin v. London & Edinburgh Ins. Co.*, 27 F.2d 616 (N.D. Ga. 1928) (insurance policy, delivered to a broker in New York, was governed by New York law, even though the insured resided in Georgia, the broker had mailed the policy to the insured in Georgia after it was delivered to the broker in New York, and the insurance was for property in Georgia); *Southern Life Insurance Co. v. Kempton*, 56 Ga. 339, 339 (1876) (delivery of policy to the agent of the applicant "was delivery to the applicant, and bound the applicant for the payment of the premiums, and the company on the policy from the date of such delivery to the agent"); OCGA § 10-6-58 ("Notice to the agent of any matter connected with his agency shall be notice to the principal."). Delivery of the policy to R-T Specialty thus constituted delivery to both M.G. Skinner (Skinner Select's retail broker) and Skinner Select (the first named insured).

[43] *Massachusetts Bay Ins. Co. v. Fort Benning Family Communities, LLC*, 2017 WL 2129909 (M.D. Ga. 2017) (quoting *Coon v. Medical Ctr., Inc.*, 300 Ga. 722, 729, 797 S.E.2d 828, 834 (2017), and noting that the Georgia Supreme Court "expressly embraced the presumption of identity" rule in *Coon*); *Motz v. Alropa Corp.*, 192 Ga. 176, 176, 15 S.E.2d 237, 238 (1941) ("the construction of the common law given by the courts of this State will control, in preference to the construction given by the court of the State of the contract."); *Slaton v. Hall*, 168 Ga. 710, 148 S.E 741 (1929) ("The common law is presumed to be the same in all the American States where it prevails. Though courts in the different States may

of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."[44] Because the common law is in force in both California[45] and Florida,[46] and neither of those states has a statute governing late notice under insurance policies, Georgia law applies even if the Policy had been delivered in one of those states.

## III.    General rules of policy interpretation.

"[I]nsurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."[47] "Where … clear and unambiguous, the court simply enforces the contract according to its terms, regardless of whether

---

place a different construction upon a principle of common law, that does not change the law. There is still only one right construction.").

[44] *Reichwaldt v. Gen. Motors LLC*, 304 F. Supp. 3d 1312, 1315 (N.D. Ga. 2018) (citation omitted); *Federal Express Corp. v. Petlechkov*, 1:15-CV-2565-TWT, 2017 WL 6460261 (N.D. Ga.  Dec. 18, 2017) (citation omitted). *See also Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) ("Where no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law.").

[45] *See, e.g., United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 744 (1950) ("Upon acquiring statehood in 1850, California adopted the common law of England . . . ."); *State of California v. Superior Court (Lyon)*, 625 P.2d 239, 244 (Cal. 1981) (California adopted the English common law in 1850).

[46] *See* Fla. Stat. Ann. § 2.01 (West) (adopting common law of England); *Knapp v. Fredricksen*, 4 So.2d 251, 252 (Fla. 1941) ("The common law of England is expressly made part of the law of Florida.") (citation omitted).

[47] *Hays v. Georgia Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111,  722 S.E.2d 923,  925 (2012) (citation omitted).

doing so benefits the carrier or the insured."[48] Courts "will not strain to extend coverage where none was contracted or intended."[49]

## III.   The failure to provide timely notice to Mt. Hawley precludes coverage.

"Under Georgia law, when an insurance policy includes a notice requirement and the insured unreasonably fails to timely comply with the requirement, the insurer is not obligated to provide a defense or coverage."[50] Although whether timely notice has been given can be a question of fact, Georgia courts have found delays of as little as three to four months to be unreasonable and preclude coverage as a matter of law.[51] Given the more than 22-month delay in giving any notice of

---

[48] *Allstate Ins. Co. v. Airport Mini Mall*, 265 F.Supp.3d 1356, 1365 (N.D. Ga. 2017) (citing *American Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 750, 707 S.E.2d 369, 371 (2011), and *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008)); *see also, Ryan v. State Farm Mut. Automobile Ins. Co.*, 261 Ga. 869, 872, 413 S.E.2d 705 (1992) ("If the terms of the contract are plain and unambiguous, the contract must be enforced as written.")

[49] *Lavoi Corp. v. National Fire Ins. of Hartford*, 293 Ga. App. 142, 145, 666 S.E.2d 387, 391 (2009) (citation omitted).

[50] *Longleaf in Vinings Homeowners Ass'n, Inc. v. QBE Ins. Corp.*, 646 F. Appx. 823, 825 (11th Cir. 2016) (citation and punctuation omitted). *See also Eells v. State Farm Mut. Auto. Ins. Co.,* 324 Ga. App. 901, 752 S.E.2d 70, 72 (2013) ("It is well established that a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification.").

[51] *See, e.g., Hathaway Dev. Co. v. Illinois Union Ins. Co.*, 274 Fed. Appx. 787 (11th Cir. 2008) (delays of four, five, and eight months in notifying insurer of occurrences were unreasonable as a matter of law); *Auto Owners Ins. Co. v. Sapp*, 2017 WL 957361, at *3 (M.D. Ga. Mar. 10, 2017) (four-month delay between occurrence and notice to insurer was unreasonable as a matter of law and precluded coverage). *See also Regent Ins. Co. v. Bravo Food Serv., Inc.*, 2014 WL 2442791

the Wilder's death, the more than 23-month delay in giving any notice of Johnson's injuries, and the more than 26-month delay in Mt. Hawley being sent a copy of the demand letter from the underlying plaintiffs' attorney, Mt. Hawley is not obligated to cover East Perimeter or Ventron for the incident that resulted in the two claims and underlying lawsuits.

## A.    **Policy's notice requirements are conditions precedent to coverage.**

"Generally, notice provisions are made a condition precedent to coverage so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available." [52]

Here, the Policy required the insured, in the event of "any occurrence that may result in a claim against this policy," to "immediately report such occurrence." [53] It also required any Named Insured (including Osgoode Properties) to see to it that Mt. Hawley is "notified as soon as practicable of an 'occurrence' or an offense which may result in a claim," and the Named Insured and "any other

---

(S.D. Ga. 2014) (five-to-six-month delay); *Illinois Union Ins. Co. v. Sierra Contracting Corp.*, 744 F. Supp. 2d 1349, 1352-53 (N.D. Ga. 2010) (nine-month delay); *GEICO Indem. Co. v. Smith*, 338 Ga. App. 455, 456, 788 S.E.2d 150, 151 (2016) (nearly six-month delay); *Snow v. Atlanta Int'l Ins. Co.*, 182 Ga. App. 1, 354 S.E.2d 644, 645 (1987) (10-month delay).

[52] *Illinois Union Ins. Co. v. Sierra Contracting Corp.*, 744 F.Supp.2d 1349, 1351 (N.D. Ga. 2010).

[53] Policy [Ex. J-1], p. 26.

involved insured," to immediately send Mt. Hawley "copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"[54] Georgia courts have treated such mandatory language as a condition precedent to coverage.[55]

"Beyond that, the notice provisions appear under sections entitled, '. . . Conditions,' and a subsection entitled, 'Duties in the Event of . . . Claim or Suit.' This language clearly expresses the intention that the notice provisions be treated as conditions precedent to coverage."[56] The Mt. Hawley Policy contains these same provisions, and its conditions further provide that no person or organization has a right to "sue us on this Coverage Part unless all of the terms have been fully complied with,"[57] which also establishes that the notice provisions are conditions precedent to coverage.[58]

---

[54] Policy [Ex. J-1], pp. 17-18.

[55] *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. Appx. 17, 21 (11th Cir. 2012) (citing *Forshee v. Employers Mut. Cas Co.*, 309 Ga. App. 621, 711 S.E.2d 28, 30-31 (2011), and *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 649 S.E.2d 602, 606-07 (2007)).

[56] *LeBlanc*, 494 F. Appx. at 21. *See* Policy [Ex. J-1/Doc. 1-7], pp. 17-18.

[57] Policy [Ex. J-1], p. 34.

[58] *Bramley v. Nationwide Affinity Ins. Co. of America*, 345 Ga. App. 624, 637, 814 S.E.2d 770, 773 (2018) (policy language that "no legal action may be brought against the company . . . until the insured has fully complied with all the terms of the policy" made compliance with the policy's notice requirement a condition precedent to coverage). *See also Zurich American Ins. Co. v. Jones*, 2018 WL 4261071 at *4-5 (S.D. Ga. 2018) (compliance with notice conditions was a

"It is settled under Georgia law that, when an insurance policy includes a notice requirement as a condition precedent to coverage, and when the insured unreasonably fails to timely comply with the notice requirement, the insurer is not required to provide coverage."[59] As shown below, East Perimeter and Ventron unreasonably failed to comply with the notice requirements in the Policy, so Mt. Hawley is not required to provide coverage.

### B. East Perimeter, Ventron, and Osgoode Properties failed to timely report the incident to Mt. Hawley.

The Policy's notice conditions required East Perimeter and Ventron (if they qualify as insureds) to immediately report "any occurrence that may result in a claim against this policy."[60] The Policy also required Osgoode Properties, as a named insured, to "see to it" that Mt. Hawley be "notified as soon as practicable of

---

condition precedent to coverage, where policy provided that no person or organization had a right to sue insurer unless all of the terms had been fully complied with); *Auto Owners Ins. Co. v. Sapp*, 2017 WL 957361 at *3 (M.D. Ga. 2017) (same).

[59] *Forshee v. Employers Mut. Cas Co.*, 309 Ga. App. 621, 623, 711 S.E.2d 28, 31 (2011).

[60] Policy [Ex. J-1], p. 26. The shooting and assault and battery constitute an occurrence ("an accident, including continuous or repeated exposure to substantially the same general harmful conditions") under the Policy, triggering the Policy's notice requirements. Policy [Ex. J-1], p. 21. *See also Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 286 Ga. App. 183, 185, 648 S.E.2d 498, 500 (2007) (attack against insured's resident by third party occurred without insured's foresight, expectation, or design, and thus was accidental for purposes of coverage).

an 'occurrence' or an offense which may result in a claim."[61]

"To comply with an immediate notice requirement, an insured must give notice 'with reasonable diligence and within a reasonable length of time in view of the attending circumstances of each particular case.'"[62] East Perimeter, Ventron, and Osgoode failed to meet these requirements, as no notice of the December 26, 2015 incident or Wilder claim was given until November 13, 2017, and no notice of the Johnson claim arising out of the incident was given until December 6, 2017. East Perimeter, Ventron, and Osgoode each had notice of the incident the day it occurred and long before any notice was provided to Mt. Hawley. These lengthy delays of notice are unreasonable and preclude coverage as a matter of law.

In *Kay-Lex Co. v. Essex Insurance Co.,* 286 Ga. App. 484, 649 S.E.2d 602 (2007), the Court of Appeals affirmed summary judgment for insurance companies due to the insured's failure to provide timely notice of an occurrence. On June 19, 2003, an employee of the insured was killed after losing control of a forklift, which backed out of a loading dock door and fell on him. The policy provided, "You

---

[61] Policy [Ex. J-1], pp. 17-18.

[62] *Johnson & Bryan, Inc. v. Utica Mut. Ins. Co.*, No. 17-15337, 2018 WL 3387525, at *2 (11th Cir. July 11, 2018) (quoting *Advocate Networks, LLC v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 674 S.E.2d 617, 619 (2009)). *See also State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. Appx. 17, 21 (11th Cir. 2012) ("Georgia precedent shows that 'prompt' has the same meaning as terms like 'as soon as practicable' and 'immediate.'") (citations omitted).

must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."[63] Notice did not occur until June 18, 2004, one year after the accident. The court held that "the one-year delay and notice to the insurers in this case is unreasonable as a matter of law, and therefore summary judgment was proper on this ground."[64] Likewise, the almost two-year delay in providing any notice to Mt. Hawley of the shooting and assault and battery was unreasonable as a matter of law, precluding coverage.

### C. Ventron did not immediately send the January 8, 2016 demand letter to Mt. Hawley.

The Policy also required Ventron to immediately send Mt. Hawley a copy of the January 8, 2016 letter from attorney Evon B. Williams, which discussed the claims surrounding the shooting of Marcus Wilder and demanded Ventron's insurance information.[65] This letter was not provided to Mt. Hawley until May 21,

---

[63] *Kay-Lex Co. v. Essex Ins. Co.,* 286 Ga. App. 484, 488, 649 S.E.2d 602, 606-607 (2007)

[64] *Id.* at 490 (citing *Southeastern Express Systems v. Southern Guar. Ins. Co. of Ga.,* 224 Ga. App. 697, 701, 482 S.E.2d 433 (1997) (failure to give notice for eight months was not timely as a matter of law, and insured did not have to show prejudice), and *Snow v. Atlanta Intl. Ins. Co.,* 182 Ga. App. 1, 2, 354 S.E.2d 644 (1987) (insurer entitled to summary judgment where it was not notified for ten months after the accident and six months after suit was filed).

[65] Policy [Ex. J-1], pp. 17-18, 26; Ex. C-3 at INDIVIDUAL DEFS 00143. The shooting and assault and battery constitute an occurrence ("an accident, including continuous or repeated exposure to substantially the same general harmful conditions") under the Policy, triggering the Policy's notice requirements.

2018, more than two years later and only in response to discovery requests in this case. Ventron's breach of this notice condition is an independently sufficient ground for granting summary judgment in favor of Mt. Hawley.

In *Johnson & Bryan, Inc. v. Utica Mutual Ins. Co.*, 2018 WL 3387525 (11th Cir. July 11, 2018), the policy at issue contained the same notice requirement for demands: "You and any other involved insured must: (1) Immediately send us copies of any demands, notices, summonses, subpoenas or legal papers received in connection with the 'claim' or 'suit.'"[66] A lawyer sent a demand letter to the insured on June 18, 2015, asking it to tender the letter to its insurance carrier.[67] Although the letter was received by one of the insured's mailroom employees on June 22, 2015, the insured did not send a copy to the carrier at that time. The insured was served with a lawsuit on August 31, 2015, and notified the carrier of the suit and demand letter on September 2, 2015. The Eleventh Circuit (applying Georgia law) held that the 72-day delay in sending a copy of the demand letter was

---

Policy [Ex. J-1], p. 21. *See also Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 286 Ga. App. 183, 185, 648 S.E.2d 498, 500 (2007) (attached against insured's resident by third party occurred without insured's foresight, expectation, or design, and thus was accidental for purposes of coverage).

[66] *Compare Johnson & Bryan, Inc. v. Republic-Franklin Ins. Co.*, No. 1:17-CV-02609-LMM, 2017 WL 6597930, at *2 (N.D. Ga. Nov. 20, 2017) (quoting policy language), *aff'd sub nom. Johnson & Bryan, Inc. v. Utica Mut. Ins. Co.*, 2018 WL 3387525 (11th Cir. July 11, 2018), *with* Policy [Ex. J-1], p. 18.

[67] *Johnson & Bryan, Inc. v. Utica Mutual Ins. Co.*, 2018 WL 3387525, at *1 (11th Cir. July 11, 2018).

unreasonable and precluded coverage as a matter of law.[68]

In *Advocate Networks, LLC v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 674 S.E.2d 617 (2009), the Georgia Court of Appeals enforced a notice condition, which, similar to the third notice condition in the Mt. Hawley policy, provided that, "[y]ou and any other involved insured must: (1) *Immediately* send us *copies* of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit.'"[69] The insured waited four months after receiving a complaint before sending a copy to its insurer.[70] The court held that the insured had violated the notice condition and that Hartford therefore had no duty to defend or indemnity the insured.[71] Likewise, Ventron's failure to provide a copy of the January 8, 2016

---

[68] *Id.* at *3 (citing *Granite State Ins. Co. v. Nord Bitumi U.S., Inc.*, 262 Ga. 502, 422 S.E.2d 191, 194 (1992) (46-day delay in providing notice of suit constituted a breach of the insured's duties under the policy and relieved the insurer of its obligation to defend and to indemnify); *Brooks v. Forest Farms*, 183 Ga. App. 901, 357 S.E.2d 604, 608 (1987) (insured's 24-day delay in giving notice to insurer of a demand letter "is a breach of its contractual obligation as a matter of law")).

[69] *Advocate Networks, LLC v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 339, 674 S.E.2d 617, 619 (2009). *See also, North River ins. Co. v. Gibson Technical Serv., Inc.*, at 1379 (excess insurer granted summary judgment on multiple late notice provisions, including the failure to provide notice of an indemnity demand arising out of the incident).

[70] *Id.* at 340.

[71] *Id. See also Diggs v. Southern Ins. Co.*, 172 Ga. App. 37, 38, 321 S.E.2d 792, 793 (1984) (three-month delay between the filing of the suit and notice to the carrier breached the condition requiring "immediate" notice as a matter of law; it was not necessary for the insurer to show actual harm in order to deny coverage).

demand letter from the underlying plaintiffs' attorney bars coverage for the underlying lawsuits.

## Conclusion

East Perimeter, Ventron, and Osgoode breached their contractual duties under the Policy to provide prompt notice of the December 26, 2015 incident and to immediately send Mt. Hawley a copy of the January 8, 2016 demand asking for Ventron's insurance information. They breached the notice conditions in December 2015 (after the incident) and in January 2016 (after receiving a demand letter), waiting until November 2017 before providing any notice to Mt. Hawley. These prolonged delays in providing the required notices were unreasonable and inexcusable as a matter of law, precluding coverage under the Policy.

Accordingly, the Court should grant summary judgment in favor of Mt. Hawley and against the Defendants and declare that Mt. Hawley has no duty to defend or indemnify East Perimeter or Ventron for the December 26, 2015 shooting and assault and battery, the Underlying Lawsuits, or any judgments or awards in those lawsuits.

Respectfully submitted,

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North
Suite 500
Atlanta, Georgia 30338-2668
Tel: (770) 391-9100
Fax: (770) 668-0878
kjackson@boviskyle.com
rbryant@boviskyle.com

/s/ Kim M. Jackson
Ga. State Bar No. 387420

/s/W. Randal Bryant
Ga. State Bar No. 092039

*Counsel for Plaintiff Mt. Hawley*
*Insurance Company*

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify, pursuant to Local Rule 7.1D and Local Rule 5.1C of the United States District Court, Northern District of Georgia, that the foregoing brief was prepared in 14 point Times New Roman font.

<u>/s/  W. Randal Bryant</u>
Georgia Bar No. 092039


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing *Plaintiff Mt. Hawley Insurance Company's Brief in Support of Its Motion for Summary Judgment* was this day filed with the Clerk of Court using the CM/ECF system, which will automatically send an email notification of such filing to Alexander D. Russo, Angela R. Fox, Christina Yousef, James Darren Summerville, James J. Leonard, John C. Bonnie, Kurt G. Kastorf, Lawrence J. Bracken, II, Matthew Bryan Weaver, Maxwell Kent Thelen, Robert Douglas Chesler, and Stephen James Rapp.

This 22nd day of January, 2019.

**BOVIS, KYLE, BURCH & MEDLIN, LLC**

200 Ashford Center North, Suite 500
Atlanta, GA   30338-2668
(770) 391-9100 (telephone)
(770) 668-0878 (facsimile)

<u>/s/W. Randal Bryant</u>
Georgia Bar No. 092039
rbryant@boviskyle.com

*Counsel for Mt. Hawley Insurance Co.*