## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MT. HAWLEY INSURANCE COMPANY,

        Plaintiff,

v.

EAST PERIMETER POINTE
APARTMENTS LP; VENTRON
MANAGEMENT, LLC; MIRANCE
WILDER; CONSTANCE IRIONS; and
ADRIAN JOHNSON,

        Defendants.

_____

EAST PERIMETER POINTE
APARTMENTS LP; VENTRON
MANAGEMENT, LLC,

        Third-Party Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY,

        Third-Party Defendant.

Case No. 1:18-cv-00367-TWT

## <u>THIRD-PARTY DEFENDANT LEXINGTON INSURANCE COMPANY'S RESPONSE TO EAST PERIMETER POINTE APARTMENTS LP'S MOTION FOR SUMMARY JUDGMENT</u>

Third-Party Defendant Lexington Insurance Company ("Lexington") files its

Response to Defendant East Perimeter Pointe Apartments LP's ("EPPA") Motion

for Summary Judgment under Fed. R. Civ. P. 56 and Local Rule 56.1, and in support thereof states:

## I.   <u>Summary of the Argument</u>

This is an insurance coverage dispute arising out of an assault and murder at a Georgia apartment complex that turns on a single issue: whether EPPA and Ventron Management, LLC timely notified Lexington of these events, as they were required to do under the provisions of the Lexington policy.  EPPA concedes as much in its motion for summary judgment.  (Dkt. 93-2, p. 1) ("This case concerns a single issue . . . .").   There is no dispute that EPPA did not notify Lexington of the shooting or assault for more than two years, until after EPPA had been sued in two different lawsuits, but the effect of this delay varies depending on whether Georgia or California law applies.   As recently re-affirmed by the Georgia Supreme Court, Georgia law applies because there is no California statute on point, and California is a common law state.  Under Georgia law, EPPA's two-year delay is untimely as a matter of law.   Accordingly, the Court should deny EPPA's motion for summary judgment and grant Lexington's motion on this issue.

## II.   <u>Argument</u>

### A.   **Georgia law applies.**

Georgia law governs the Lexington Policy regardless of whether it was delivered in Georgia or California.  Where jurisdiction is based on diversity, the court must apply the choice of law rules of the forum state. <u>Shorewood Packaging Corp. v. Commercial Union Ins. Co.</u>, 865 F. Supp. 1577, 1578 (N.D. Ga. 1994). "With regard to insurance contracts, Georgia law provides that the last act essential to the completion of the contract is delivery; consequently, insurance contracts are considered made at the place where the contract is delivered." <u>Johnson v. Occidental Fire & Cas. Co. of N. Carolina</u>, 954 F.2d 1581, 1584 (11th Cir. 1992). This rule does not apply if the state of delivery lacks a substantial relationship to the parties or transaction. <u>Id.</u>  In addition, Georgia will apply the law of another state only if that state has a statute addressing the particular question at issue. <u>Coon v. The Medical Center, Inc.</u>, 797 S.E.2d 828, 834 (Ga. 2017).  "In the absence of a statute, however, at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia." <u>Id.</u>; <u>see</u> <u>also</u> <u>Frank Briscoe Co. v. Georgia Sprinkler Co.</u>, 713 F.2d 1500, 1503 (11th Cir. 1983) ("When no statute is involved, Georgia courts

apply the common law as developed in Georgia rather than foreign case law."); Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n.6 (11th Cir. 1987).

This Court and other Georgia federal courts consistently applied this limitation on the application of foreign law for many years in insurance and non-insurance cases before the Georgia Supreme Court's decision in Coon,[1] and they continue to do so after that decision. Renaissance Recovery Sols., LLC v. Monroe Guar. Ins. Co., 2017 WL 4018861, at *14 (S.D. Ga. Sept. 12, 2017) (applying Georgia law to policies delivered in Michigan because there was no applicable Michigan statute); Massachusetts Bay Ins. Co. v. Fort Benning Family Communities, LLC, 2017 WL 2129909, at *1 (M.D. Ga. May 15, 2017) (holding that Georgia law applied to insurance policies delivered in Maryland because there was no Maryland statute on point); see Reichwaldt v. Gen. Motors LLC, 304 F. Supp. 3d 1312, 1315 (N.D. Ga. 2018) (in a tort case, applying Georgia law despite accident occurring in Nebraska under exception where there is no statute on point);

---

[1] See Frank Briscoe Co., 713 F.2d at 1503; In re Tri-State Crematory Litig., 215 F.R.D. 660, 678 (N.D. Ga. 2003); Shorewood Packaging Corp., 865 F. Supp. at 1581; Briggs & Stratton Corp. v. Royal Globe Ins. Co., 64 F. Supp. 2d 1340, 1344 (M.D. Ga. 1999); Singletary v. Se. Freight Lines, Inc., 832 F. Supp. 1552, 1556 (N.D. Ga. 1993); Bradham v. Randolph Trucking Co., 775 F. Supp. 395, 397 (M.D. Ga. 1991), aff'd, 960 F.2d 1018 (11th Cir. 1992); Trusted Data Sols., LLC v. Kotchen & Low, LLP, 2015 WL 11251959, at *3 (N.D. Ga. Feb. 6, 2015); Nat'l Fire Ins. Co. of Hartford v. Centraarchy Rest. Mgmt. Co., 2009 WL 10670653, at *2 (N.D. Ga. Sept. 8, 2009); McChesney v. Old Republic Nat'l Title Ins. Co.,  2008 WL 11320039, at *13 (N.D. Ga. Feb. 12, 2008).

Fed. Express Corp. v. Petlechkov, 2017 WL 6460261, at *2 (N.D. Ga. Dec. 18, 2017) (in tort case where injury suffered in Tennessee, holding that "[s]ince no Tennessee statute is involved, the Court will apply Georgia law.").

In this case, there is no California statute addressing untimely notice; it is a common law doctrine.  See UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 368 (1999); Pitzer Coll. v. Indian Harbor Ins. Co., 845 F.3d 993, 996 (9th Cir. 2017).  "Upon acquiring statehood in 1850, California adopted the common law of England as the rule of decision in its courts when not inconsistent with the Federal or State Constitutions or State legislation." United States v. Gerlach Live Stock Co., 339 U.S. 725, 744 (1950).  The common law remains in effect today unless it conflicts with a statute or the Constitution,  Cal. Civ. Code § 22.2,[2] and timely notice under an insurance policy is a common law issue.

Accordingly, California is "a state where the common law is in force" as stated in Coon—at least with respect to the issue of timely notice under insurance policies, and because California has no statute addressing late notice, Georgia law applies.  Coon, 797 S.E.2d at 834.  This is particularly true here, where the named

_____

[2] This California statute provides that "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State."  Cal. Civ. Code § 22.2.

insured, WCPP, is a risk purchasing group that does not own any of the properties insured under the Lexington Policy.  The risk insured by the Lexington Policy is the EPPA apartment complex, which is located in Georgia, and the Lexington Policy was delivered to R.T. Specialty in Georgia.  Consequently, the state of California has no relationship to EPPA, Ventron, or Lexington—let alone a substantial relationship.  Under these circumstances, Georgia law controls.

**B.    The thirteen-colony rule does not apply.**

EPPA admits that Georgia will apply the law of another state only if there is a controlling statute but, relying on a footnote in Coon, argues that this limitation applies only to states that were one of the original thirteen colonies.  (Dkt. 93-2, p. 21).  In the Coon footnote, the Georgia Supreme Court observed that "[w]e have said that this approach will be followed if the other state was one of, or formed from the territory of one of, the original 13 colonies that inherited the common law of England."  797 S.E.2d at 834 n.5.  But because Coon involved a conflict between Alabama and Georgia law, and Alabama was formed from the territory of Georgia, the court did "not address today whether the common law also may apply in other states."  Id.  The body of the opinion in Coon, however, never mentions this purported limitation and, in fact, implicitly does away with it, focusing instead on whether the common law is in force in the other state.

Specifically, the court in Coon held that "In the absence of a statute, however, at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia." Id. With this statement, the Court elevated the importance of the common law above the geographic origins of the other state. As long as "the common law is in force" in the other state, Georgia law will apply in the absence of an applicable statute. Id. If the court intended to re-affirm the thirteen colony limitation, it would not have stated the rule so broadly and, instead, could have said: "In the absence of a statute, however, *at least with respect to a state that was one of the original thirteen colonies, or formed from the territory of one*, a Georgia court will apply the common law as expounded by the courts of Georgia." But the court did the opposite—relegating the purported thirteen colony rule to a footnote, and even then, minimizing it by observing as a side note only what the court had previously done in other cases.

Moreover, the Coon court cited with approval the Eleventh Circuit's opinion in Frank Briscoe Co., 713 F.2d 1500, as well as numerous other state and federal cases that never mention the thirteen-colony limitation. 797 S.E.2d at 835. One of the cited cases, Motz v. Alropa Corp., 15 S.E.2d 237 (Ga. 1941), is factually analogous to this case. In Motz, a mortgagee sued the purchaser of Florida real

property to obtain a deficiency judgment.  <u>Id.</u> at 238.  The deed was executed in Florida, and the plaintiff plead that Florida had adopted the common law of England by statute, and that the common law—as opposed to a statute—controlled the transaction.  <u>Id.</u>  The Georgia Supreme Court held that "since only the rules of the common law, as adopted and construed in Florida, were thus pleaded as governing the transaction, the decisions of Georgia will prevail with reference thereto."  <u>Id.</u>

The reasoning of <u>Motz</u> applies equally to this case.  Here, the Lexington Policy was allegedly delivered to WCPP in California, which was not one of the original thirteen colonies, just as the deed in <u>Motz</u> was executed in Florida, also a non-thirteen-colony state.[3]  And California, like Florida, adopted English common law by statute. Cal. Civ. Code § 22.2; Fla. Stat. § 2.01.  It is also undisputed that late notice under an insurance policy is a common law issue in both Georgia and California.  Accordingly, consistent with the Georgia Supreme Court's decisions in <u>Motz</u> and <u>Coon</u>, Georgia law applies in this case.

### C.    California public policy does not control.

EPPA spends several pages of its motion incorrectly arguing that Georgia's comity statute, O.C.G.A. § 1-3-9, somehow overcomes the above choice-of-law

---

[3] <u>Arrington v. Hosemann</u>, 163 S.E.2d 722, 723 (Ga. 1968) (noting that Florida was not one of the original thirteen colonies and not created from one of them).

decisions of the Georgia Supreme Court and the Eleventh Circuit Court of Appeals.  EPPA does not cite a single Georgia case that supports this argument, which is not surprising because O.C.G.A. § 1-3-9 has been in effect since at least 1933, and none of the cases cited above even mention it.  Moreover, the first sentence of the statute says that the "the laws of other states and foreign nations shall have no force and effect of themselves within this state further than is provided by the Constitution of the United States and is recognized by the comity of states."  O.C.G.A. § 1-3-9 (emphasis added).

The Georgia Supreme Court implicitly rejected EPPA's argument in Coon when, after acknowledging that "[a]s a matter of comity, a Georgia court will defer to another state's statutes, as well as its judicial decisions authoritatively interpreting those statues, in determining the law of that state[,]" the court held that Georgia does not defer to another state's common law.  797 S.E.2d at 834. Accordingly, the principle of comity does not supplant Georgia's choice of law analysis.

EPPA next argues that because California's notice rule is allegedly rooted in public policy, this Court should defer to California law on late notice.  Again, however, Georgia does not apply another state's common law decisions.  Judge Forrester rejected a similar argument in Travelers Indemnity Co. v. Douglasville

Dev., LLC, 2008 WL 4372004 (N.D. Ga. 2008), which involved untimely notice under an insurance policy issued in Florida.   Under Florida law, like California, an insurer can disclaim coverage for untimely notice only if it suffered prejudice as a result of the delay.   Id. at 6; Aseff v. Catlin Specialty Ins. Co., 115 F. Supp. 3d 1364, 1369 (S.D. Fla. 2015).   Although Georgia law requires no such showing, Judge Forrester held that Georgia law applied because there was no controlling Florida statute.   Travelers, 2008 WL 4372004 at * 6.

Here, Georgia law controls because there is no applicable California statute, and this is true regardless of the historical basis for California's notice-prejudice rule, or California public policy.

### D.   EPPA breached the notice provisions of the Lexington Policy.

#### 1.   Notice of an occurrence that may result in a claim.

The Lexington Policy requires notice as soon as practicable of an occurrence "that may result in a claim or 'suit' under [the] policy."   Under Georgia law, if a notice provision is expressly made a condition precedent to coverage, the insured must comply with it unless the insured demonstrates that its failure to comply was justified. E.g., Plantation Pipeline Co. v. Royal Indem. Co., 537 S.E.2d 165, 169 (Ga. App. 2000). The insurer does not have to prove that it was prejudiced by the insured's breach of the notice provision if notice is a condition precedent to

coverage.  N. River Ins. Co. v. Gibson Tech. Servs, Inc., 116 F. Supp. 3d 1370, 1380 (N.D. Ga. 2014); Johnson & Bryan, Inc. v. Utica Mut. Ins. Co., 741 F. App'x 722, 726 (11th Cir. 2018).   Because the Lexington Policy forbids suit against Lexington unless the insured has complied with all of the terms of the Lexington Policy, the notice provision is a condition precedent to coverage.   Barclay v. Stephenson, 787 S.E.2d 322, 329 (Ga. App. 2016).  Here, EPPA's more than two-year delay in notifying Lexington of the assault and murder violated the notice provisions of the Lexington Policy as a matter of law.

This Court addressed an identical notice provision in an umbrella policy in N. River Ins. Co., 116 F. Supp. 3d at 1370.  There, the insured (Gibson) contracted to provide telecommunications services for Comcast and then subcontracted the work to another entity (Pheckvision), which in turn subcontracted the work to still another entity (Boz), which actually performed the work for Comcast.  Id. at 1371. In June 2007, while traveling home from work, an employee of Boz caused an auto accident resulting in the death and injury of various passengers in another vehicle. Gibson was informed of the accident at the time but did not investigate—allegedly learning only that the employee of Boz would miss work.  Id. at 1372.

In March 2008, the injured parties sued Boz, its employee, and Comcast, and three months later Comcast demanded defense and indemnity for the accident from

Gibson, providing a copy of the police report and the Complaint. Comcast at the same time demanded that Gibson notify its insurance carriers of the suit. Id. Gibson chose not to notify its excess carrier (North River) either of the accident or Comcast's demand for defense and indemnity because the accident involved a subcontractor of a subcontractor, and based on an understanding that Pheckvision or an insurer of Pheckvision would be "handling the matter." At this time, Gibson "did not see that it was involved," despite learning in 2008 that it could be added as a defendant to the suit. Id. at 1373.

In October 2008, Comcast again demanded defense and indemnity from Gibson. Communications ensued between and among Gibson, its insurance broker, and a third party claims administrator ("TPA"), but notice was still not provided to North River at this time. Id. at 1373. For three years, the TPA's indemnity reserve remained at "token levels" of approximately $1,000 (reflecting a prediction of "zero liability" for Gibson) based on Gibson's representations that Pheckvision would absolve Gibson from liability. Id. Although Gibson attempted to locate the contract specifying the relative obligations between Pheckvision and Gibson, as of January 2009 it could not be found, and it was never located. Nonetheless, Gibson's broker advised the TPA that Gibson would be "okay" when it was revealed that the Boz employee was on his way home in a personal truck and

outside the service area when the accident happened. Notice was still not provided to North River.  Id.

In July 2009, Gibson and Pheckvision were added to the suit and Gibson retained legal counsel who advised Gibson to immediately notify North River. Gibson still did not do so; the TPA continued to assess Gibson's liability as doubtful; and defense counsel maintained between the fall of 2009 and 2012 that Gibson's exposure was low. Comcast and Gibson were denied summary judgment in the suit in late 2012, at which point Gibson determined that it was "reasonably likely" the excess coverage of the North River policy would be needed.  Id. at 1374.

North River ultimately learned of the accident and the suit in November 2012 from Comcast, and at some point thereafter from Gibson's broker. The matter was ultimately settled with a contribution by North River but with a reservation of rights to litigate North River's coverage obligations based upon the timeliness of notice.  Id. at 1374-75.  In the coverage litigation, Gibson contended that its assessment of the liability and lack of need for notice to North River controlled unless it was manifestly unreasonable; that the timing of the notice to North River was in fact reasonable; and that even if notice was untimely, North River had no basis for non-coverage because it admitted the settlement was reasonable, did not

show that it would have done anything differently had it received notice, and it was not prejudiced.  Id.

The Court disagreed in all respects.  Id. at 1378.  First, the Court concluded that Gibson learned of the details of the accident in June 2008 and was obliged to "see to it" that North River received notice of any "Occurrence" which may result in a claim or "Suit" under the Policy, rejecting Gibson's claim that the North River notice provision did not contain a timeliness requirement. Because Gibson learned about the accident, understood that it may result in a suit, and the notice provision was a condition precedent to coverage, Gibson was required to give notice "as soon as reasonably possible."  Id. at 1379.

According to the Court, "[t]he … provision would be pointless if the court were to accept Gibson's interpretation that notice about an 'Occurrence' could have been provided at any time." Id.  The Court furthermore noted that Gibson never investigated its potential exposure, and based solely on the belief of the company's CFO, concluded that Gibson would not be "tied into th[e] accident." This, combined with the fact that Gibson did not begin looking for the indemnification contract with Pheckvision until October 2008 (which was not located), and did not seek legal advice until 2009, evidenced a failure to exercise

due diligence or to take "appropriate steps to make an informed judgment regarding the nature and amount of the claim" as required by Georgia law.   Id.

As a matter of law, the court found a lack of due diligence in providing notice, and that Gibson's offered justifications for delay were unreasonable as a matter of law. The court furthermore found that it was irrelevant that North River did not suffer any prejudice as a result of the late notice. Id. at 1380.

The notice provision of the Lexington Policy is identical to the one at issue in North River, and the reasoning of that case applies equally here.  It is undisputed that EPPA did not notify Lexington of the murder or the assault for more than two years, until after the lawsuits were filed, despite knowing that one of its residents was murdered on site and that several individuals had been arrested as part of the investigation.  Under similar circumstances, Georgia courts have held that delays of as little as eight months violated a notice provision as a matter of law. Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245 (Ga. App. 1976) (eight months after car accident.); Maryland Casualty Co. v. Salon Avenue Suite 2, 2014 WL 4925623 (N.D. Ga. 2014) (eight months after incident); Dillard v. Allstate Ins. Co., 245 S.E.2d 30 (Ga. App. 1978) (nine months after accident); Snow v. Atlanta Int'l Ins. Co., 354 S.E.2d 644 (Ga. App. 1987) (ten months after car accident); Protective Ins. Co. v. Johnson, 352 S.E.2d 760, 761 (Ga. 1987)

(seventeen months after injury); <u>Lankford v. State Farm Mut. Auto. Ins. Co.</u>, 703 S.E.2d 436, 439 (Ga. App. 2010) (almost two-year delay after car accident).

The Court should grant this motion and enter judgment in favor of Lexington finding that the Lexington Policy does not afford coverage for the Wilder Action or the Johnson Action because EPPA breached the notice provisions of the Lexington Policy as a matter of law.

## 2. Notice of the underlying lawsuits.

The Lexington Policy also requires the insured to immediately send Lexington a copy of any legal papers received by the insured if the claim or suit is reasonably likely to involve the Lexington Policy. "Georgia courts have held that a delay of as little as three months between the filing of a lawsuit and notice to the insurer is unreasonable as a matter of law." <u>N. River Ins. Co.</u>, 116 F. Supp. 3d at 1378. The Eleventh Circuit has held that a four-month delay in notifying an excess insurer was unreasonable as a matter of Georgia law. <u>State Farm Fire & Cas. Co. v. LeBlanc</u>, 494 F. App'x 17, 23 (11th Cir. 2012).

In this case, the Wilder Action was filed on October 12, 2017, and the Johnson Action was filed on December 4, 2017. (Dkt. 1-1; Dkt. 1-2). EPPA was served with the Wilder Action on October 17, 2017. (Dkt. 91-5). The Wilder Action seeks damages for the alleged wrongful death of Marcus Wilder, including

punitive damages.  (Dkt. 1-1).  The Johnson Action seeks damages for the injuries Johnson allegedly sustained when he was beaten by the assailants in Wilder's apartment, including punitive damages.  (Dkt. 1-2).  And as noted above, EPPA knew about the murder and assault for more than two years before these lawsuits were filed.   Plaintiff's policy has a limit of $1,000,000 per occurrence and $2,000,000 in the aggregate.  (Dkt. 1-3, p.3).  Under these circumstances, EPPA's fourth-month delay in notifying Lexington of the Wilder Action and two-month delay in notifying Lexington of the Johnson Action is unreasonable as a matter of law.  LeBlanc, 494 F. App'x at 23; Diggs v. S. Ins. Co., 321 S.E.2d 792, 793 (Ga. App. 1984) (affirming summary judgment in favor of insurer where insured waited three months to notify the insurer of a lawsuit filed against him).

Accordingly, the Court should grant this motion and enter judgment in favor of Lexington finding that the Lexington Policy does not afford coverage for the Wilder Action or the Johnson Action because EPPA breached the notice provisions of the Lexington Policy as a matter of law

### E.     EPPA cannot justify the delay.

EPPA admits that it did not notify Lexington of the murder or fight for more than two years because EPPA did not believe that it would be liable for Johnson's injuries or Wilder's death.  Under Georgia law, however, an insured's justification

for failure to comply with a notice provision cannot be based on the insured's conclusion that it is free from fault or not liable to the other party. N. River Ins. Co., 116 F. Supp. 2d at 1378; Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc., 209 S.E.2d 6, 9 (Ga. App. 1974). EPPA's further contention that as the property owner, it had no duty to notify Lexington, is also insufficient because EPPA contends that it is an insured under the Lexington Policy, (Dkt. 21, ¶ 11), and as purported insured, EPPA had a duty to notify Lexington of occurrence that may result in a claim. (Dkt. 90-3, §VI(G)). An insured's ignorance of policy provisions cannot excuse untimely notice. Johnson, 352 S.E.2d at 761.

Accordingly, EPPA cannot satisfy its burden to excuse the failure to comply with the notice provisions of the Lexington Policy as a matter of law.

**F.     The murder and assault are two occurrences.**

EPPA argues that the Wilder murder and Johnson assault constitute two occurrences under Plaintiff's policy. Lexington agrees. Georgia follows the cause theory to determine the number of occurrences, under which the number of occurrences is based on the cause of the injuries. State Auto Property and Cas. Co. v. Matty, 690 S.E.2d 614, 618 (Ga. 2010). In this case, Johnson was allegedly beaten by a group of men who broke into Wilder's apartment and robbed Johnson. (Dkt. 91-3). Later, when Wilder returned home, someone burst out of his closet

with a gun and shot Wilder.  Id.  The cause of Johnson's injuries is the beating and robbery, while the cause of Wilder's death is the shooting, which occurred hours after the Johnson incident.

The Florida Supreme Court addressed a similar situation in Koikos v. Travelers Ins. Co., 849 So. 2d 263, 271 (Fla. 2003).  In Koikos, the question was whether a nightclub shooting that claimed two victims constituted one or two occurrences.  The victims sued the club for negligent security, and the Florida Supreme Court concluded, "consistent with the 'cause theory,' that in the absence of clear language to the contrary, when the insured is being sued for negligent failure to provide security, 'occurrence' is defined by the immediate injury-producing act and not by the underlying tortious omission. Thus, in this case, the immediate causes of the injuries were the intervening intentional acts of the third party-the intruder's gunshots." Id. at 271–72.   Accordingly, the court held that there were two occurrences because two separate shots injured the victims.  Id. at 272; see also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1332 (11th Cir. 2005) ("we find that each act of the perpetrator is considered one occurrence. Hence, the rape of the Victim is one occurrence; the robbery is another; the kidnapping of the Victim and her children is another; and

each act of assault and battery upon the Victim and each of her children, is another.").

In this case, the cause of the injuries is the beating and the shooting, which are two different incidents that caused different injuries to different people. Under these circumstances, there are two "occurrences."

## III. <u>Conclusion</u>

The Court should deny EPPA's motion, grant Lexington's motion, enter summary judgment in favor of Lexington, and hold that coverage is not afforded by the Lexington Policy to EPPA for the Wilder Action or the Johnson Action.

WHEREFORE, Lexington respectfully requests that this Court grant this motion, enter summary judgment in favor of Lexington, hold that coverage is not afforded by the Lexington Policy to EPPA for the Wilder Action or the Johnson Action, and award any other relief the Court deems appropriate.

This 26th day of February, 2019.

WEINBERG, WHEELER, HUDGINS
GUNN & DIAL, LLC

*/s/ Stephen J. Rapp*
John C. Bonnie
Georgia Bar No.: 067540
Stephen J. Rapp
Georgia Bar No.: 103806
3344 Peachtree Road, Suite 2400
Atlanta, Georgia 30326
404.876.2700 (tel) / 404.875.9433 (fax)
srapp@wwhgd.com
jbonnie@wwhgd.com
*Attorneys for Lexington Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2019, I electronically filed the foregoing motion via the CM/ECF system, which will automatically send e-mail notification of such filing upon all parties to this matter.

*/s/ Stephen J. Rapp*
Stephen J. Rapp
Georgia Bar No. 103806
